17895

Cecelia C. COX, Respondent, v. FIRST PROVIDENT CORPORATION, Appellant

(125 S. E. (2d) 1)

*Messrs. Dusenbury, Dusenbury & McKenzie,* of Florence, *for Appellant,*

*Messrs. McEachin, Townsend & Zeigler,* and *J. Frank Looper,* of Florence, *for Respondent,*

April 4, 1962.

TAYLOR, Chief Justice.

This appeal is from an Order of the Court of Common Pleas of Florence County, dated March 9, 1961, wherein a written contract between plaintiff and defendant for the sale of lots in a subdivision near the City of Florence, South Carolina, was ordered rescinded and an accounting made to plaintiff.

A general order of reference was ordered and the testimony taken by the Master for Florence County who filed his Report recommending that the contract be rescinded and plaintiff have an accounting from defendant. Exceptions were duly filed to the Master's Report and arguments held thereon by Honorable G. Badger Baker, Resident Judge of the Twelfth Judicial Circuit, who sustained the findings of fact and law of the Master by Order dated March 9, 1961; and defendant in his appeal presents, according to his brief, two questions: 1. Was there a breach of the contract by defendant and if so, was such breach excusable or justifiable in this case? 2. Should the Master's findings and recommendations have been sustained in the absence of the Master's ruling upon objections made to proffered evidence?

The plaintiff, a widow advanced in age and in poor health, lives with her sister and, according to the finding of the Master, lacking in sound business judgment.

The Master further found that when the contract was presented, it was signed by plaintiff without being read or the pages thereof being initialed; that Mr. Rainwater, Executive Vice President of defendant company, departed with the contract, taking the original and all copies; that it was several weeks before he returned a copy of the contract to plaintiff and there is testimony to the effect that the contract had been altered in the meantime.

Paragraph 4 of said contract provides "That right is reserved to the party of the second part to be allowed to con-

tinue to make individual sales of individual lots to individuals; provided that the sales price of any such sale is equal to or above the sale price as set forth by the party of the first part at the time of such sale."

The Master found that in 1960, Mr. F. D. Brown, after observing plaintiff's name on a sign in Bellevue Subdivision approached the plaintiff for the purpose of buying Lot No. 2 and one-half of Lot No. 4, Block C, in said subdivision. The plaintiff agreed to sell him these lots for $2,000.00, to which sales price Mr. Brown was agreeable. Plaintiff's Exhibits 2 and 3 disclose that Mr. Brown's offer to purchase the aforementioned lots for $2,000.00 was transmitted to the defendant. In reply, Mr. Rainwater's letter on behalf of the defendant read in part as follows:

"As explained to you by telephone, I wish to put. Mr. Brown on notice of the many and varied problems that exist in Bellevue Subdivision which I feel in all good consciousness he should be aware of. However, if he desires to arbitrarily purchase this lot and a half then it is his affair.

"At the time of our conversation, I specifically referred to the exclusive sales agreement that we entered into on the 24th day of October, 1959. I more specifically refer to Paragraph 4 which spells out that the party of the first part, which is First Provident Corporation, shall set the sales price of any such sale which you are allowed to make at the time of said sale. I wish to place you on notice that First Provident Corporation is specifically setting the sales price at this time of Lot 2 and half of Lot 4 in Block C of Bellevue Subdivision at $3,000.00. In addition we are requiring a contractual agreement which will provide for a special assessment on these lots to cover the costs of paving and the servicing of city water to these lots.

"It will be appreciated if you will refer to our agreement of October 24, 1959, and comply with the requirements which are referred to above."

As a result of the defendant's position regarding the above matter, Mr. Brown did not purchase the lots in question but bought another lot in an adjoining development for a reasonable price.

The Master found from the testimony that the offer of Mr. Brown in the amount of $2,000.00 was a reasonable sales price and represented the approximate market value of the lots. In view of the construction given Paragraph 4 of the executed contract, the sales price offered by Mr. Brown would have entitled the defendant to a commission on such sale in the amount of $350.00, the sum of $1,650.00 being the plaintiff's share therein; that such commission would have been a reasonable one; that the defendant's stipulated price of $3,000.00 was excessive and in view of the principal-agent relationship then existing between plaintiff and defendant, was evidence of a lack of good faith. Moreover, the statement by the defendant that it was requiring a contractual agreement to provide for a special assessment on the lots in question to cover the costs of paving, etc., was evidence of a lack of good faith, as well as being a condition which the defendant had no right to impose.

The Master further found that about March, 1960, Dr. J. D. Young began negotiations with Mr. D. N. Epps for the purchase of a lot in the Bellevue Subdivision; that although Mr. Epps was not employed on a regular salary by the defendant, he had desk space in its building, did some appraisal work for it and was authorized to solicit sale of lots in this subdivision. Dr. Young testified that he was first offered the lot for $1,800.00; that the purchase price was then raised to $2,200.00; that he then became interested in a lot and a half, which was offered to him for $2,700.00. He further testified that when he decided not to finance purchase of the lot and the home to be constructed upon it through the defendant, he was then told that the lots in question would not be sold to him.

Based upon the construction herein given the contract between the parties and findings of fact set forth above, the

Master found that defendant has substantially breached its contract with the plaintiff, and therefore, plaintiff is entitled to a rescission of the contract.

From the foregoing it is evident that there is competent and substantial evidence in the record to support the facts as determined by the Master and concurred in by the Circuit Judge and such findings will not be disturbed on appeal unless they are without evidentiary support or are against the clear preponderance of the evidence. *Alderman v. Alderman,* 178 S. C. 9, 181 S. E. 897, 105 A. L. R. 102; *Young v. Levy et al.,* 206 S. C. 1, 32 S. E. (2d) 889.

Appellant is hardly in position to successfully contend that nonperformance on his part is excusable or justified inasmuch as one who so asserts has the burden of establishing the facts relied on for such excuse. Upon proof of the execution of the contract and the breach thereof, the burden is on defendant to show an excuse for such breach or delay in performance. 17 C. J. S., Contracts, § 590, p. 1231. Defendant in instant case having offered no testimony cannot successfully contend here that he met the requirement of showing an excuse for the breach of the contract.

The second question must also be resolved against defendant's contention.

In *Pack v. Katzin,* 215 N. C. 233, 1 S. E. (2d) 566, cited by defendant, the Supreme Court of North Carolina stated:

"* * * * The referee should enter his ruling on each objection, either at the time of taking the testimony, or subsequently, or in his report, to the end that it may be known whether the evidence objected to was considered or excluded from consideration in making his findings of fact. However, where the objections are made to a certain line of testimony, or to all testimony tending to show certain facts, it would be regarded as a compliance with this rule if the referee incorporates in his report a general statement

of his rulings such as would afford the parties and the reviewing judge on exceptions filed full opportunity to consider the effect of the referee's ruling and to give proper weight to his findings from the evidence reported. * * *

"Considering the nature and purpose of the testimony heard by the referee in this case, we are unable to say that the defendants have been prejudiced by the manner in which the referee has made his report and noted his rulings."

The referee should enter his rulings on each objection as made in order that the Circuit Judge might have the benefit of such ruling; however, the objections in instant case were made to a certain line of testimony relied upon by plaintiff to establish certain facts, and we are unable to say that defendant was in anywise prejudiced thereby.

For the foregoing reasons we are of opinion that all exceptions should be dismissed and the Order appealed from affirmed, and it is so ordered. Affirmed.

Moss, Lewis and Bussey, JJ., concur.