18139

BOB JONES UNIVERSITY, INC., Appellant, v. The CITY OF
GREENVILLE, South Carolina, Gerald W. Shaw, City Manager,
and James H. Ward, Building Commissioner, Respondents.

(133 S. E. (2d) 843)

*Messrs. C. S. Bowen,* of Greenville, and *Watkins, Vandiver, Freeman & Kirven,* of Anderson, *for Appellant,*

*W. H. Arnold, Esq.,* of Greenville, *for Respondents,*

*Messrs. C. S. Bowen,* of Greenville, and *Watkins, Vandiver, Freeman & Kirven,* of Anderson, *for Appellant, in Reply,*

December 11, 1963.

Moss, Justice.

Bob Jones University, Inc., the appellant herein, owns and operates a liberal arts college in the northeastern section of the City of Greenville. The appellant owns about one hun-

dred and fifty acres of land bounded generally by U. S. Highway No. 29, known also as Wade Hampton Boulevard; State Highway No. 291; East North Street; and White Oak Drive. There are located upon this said tract of land residences, dormitories, classrooms, and other buildings used in connection with the university.

It appears that a comprehensive zoning ordinance was adopted by the city council of the City of Greenville in 1952, pursuant to the statutory law of South Carolina, which is now codified as Sections 47-1001 to 47-1017, inclusive, 1962 Code of Laws of South Carolina. It appears that pursuant to the aforesaid comprehensive zoning ordinance the City of Greenville was divided into different zones or districts and the property with which we are here concerned, known as the Wilson property, and containing approximately sixteen acres, was zoned as "A-1 Residential." The record shows that on December 4, 1961, the Wilsons made application to the city council for the rezoning of their property and such was referred to the Planning and Zoning Commission of said city. This commission, after hearings, recommended that the Wilson property be rezoned from an A-1 residential classification to an E-1 retail shopping center classification. Thereafter, the city council, after public hearings, and in the manner provided for by law, did, on July 10, 1962, adopt an ordinance whereby it rezoned certain real property situate in said city, and being a portion of the land located in the block bounded by Wade Hampton Boulevard, White Oak Drive, Beuna Vista Street and Karen Drive.

This action was instituted by the appellant for the purpose of having the court declare the rezoning ordinance null, void and of no effect, and to enjoin the City of Greenville, its City Manager and Building Commissioner, the respondents herein, from according the said rezoning ordinance any validity and from issuing any building permits thereunder.

The pleadings present for determination the validity of the ordinance of the City of Greenville undertaking to amend

the comprehensive zoning ordinance by rezoning lands commonly known as the Wilson property, from a residential zone into a retail shopping center classification. Invalidity is asserted on the ground that the rezoning ordinance is arbitrary and unreasonable and in contravention of the constitution and the enabling statute empowering municipal corporations to zone and rezone property and the adoption of such ordinances was an abuse of discretion.

This case, by agreement, was referred to the Master in Equity for Greenville County, with instructions to take the testimony and report the same to the Court with his findings of fact and conclusions of law. The Master held three references, at which voluminous testimony was taken and many exhibits were offered in evidence. The Master, on January 3, 1963, filed his report, wherein he recommended that the complaint of the appellant be dismissed and the action of the Greenville City Council, rezoning the property in question from residential to business, be upheld in every respect. The appellant filed numerous exceptions to the report of the said Master, and these exceptions are substantially the same as now presented to this Court. The appeal was heard by the Honorable James Hugh McFaddin, Presiding Judge, and, on April 12, 1963, he confirmed the report of the Master and made it the judgment of the Court. The appellant, within due time, filed notice of intention to appeal to this Court.

The Wilson property is located on the southern side of Wade Hampton Boulevard, otherwise known as U. S. Highway 29, which is a four lane divided superhighway between Greenville and Spartanburg. Just east of the Wilson property and also fronting on Wade Hampton Boulevard is the property of the appellant. However, these two properties are separated by a street known as White Oak Drive, of a width of approximately fifty feet. Just west of the Wilson property, also on Wade Hampton Boulevard, is a recently constructed shopping center referred to as Wade Hampton Shopping Center, located on a tract of land containing twelve acres. The Wilson property and the Wade Hampton Shopping

Center property are separated by Karen Drive, a street fifty feet in width.

There is evidence from which it can be concluded that all of the property along Wade Hampton Boulevard, from Main Street in the City of Greenville to the appellant's property, has been zoned for business purposes, with the exception of the Wilson property and certain property across Wade Hampton Boulevard. A map in evidence shows that along Wade Hampton Boulevard and extending towards the main street of the City of Greenville, much of the property is designated as local commercial and light industrial. A further examination of this map shows that a greater portion of the property across Wade Hampton Boulevard and immediately in front of the property of the appellant is classified as local commercial. A portion of appellant's property lying on the northeast corner and at the intersection of State Highway No. 291 with Wade Hampton Boulevard is likewise so classified. It is undisputed from the record that immediately across State Highway No. 291, which is the northeastern boundary of appellant's property, there is located the Lake Forest Shopping Center, consisting of approximately fifteen stores. However, it should be stated that this property does not lie within the corporate limits of the City of Greenville and, hence, is not subject to zoning. It further is an admitted fact that the appellant built on its own property a supermarket, which it leases as a Winn-Dixie Store. A witness for the appellant admitted that beyond its property is a Drive-In Restaurant, furniture business, a Howard Johnson restaurant, a bank building, and a filling station, all in close proximity to Bob Jones University, and that immediately across Wade Hampton Boulevard and directly in front of appellant's property, as is heretofore stated, there are some six to eight stores of various kinds, including a large warehouse owned by a trucking company.

It appears from the record that the Planning and Zoning Commission of the City of Greenville and the city council had what is referred to as the "Hoyt Report", which had to

do with a market survey made on the Wilson property; and the "Hamer Report", which was a like study made in connection with rezoning of the property now occupied by the Wade Hampton Shopping Center, and in the latter report, a recommendation was made that additional property adjacent to the tract occupied by the Wade Hampton Shopping Center be obtained for future expansion.

The appellant presented a number of witnesses who testified that the rezoning of the Wilson property would materially affect the value of the properties adjacent thereto. There was testimony in behalf of the respondents that the rezoning of the Wilson property was proper and for the best interest of the City of Greenville, and would not affect the market value of the property on the north side of Wade Hampton Boulevard. One of the witnesses for the respondents testified that the property on the northern side of Wade Hampton Boulevard had already been damaged, not by virtue of the Wade Hampton Shopping Center, or any other shopping center, but because of the commercial nature of Wade Hampton Boulevard. This witness also testified that you would have to go beyond State Highway No. 291 before you could classify property as residential, but from this highway towards the City of Greenville practically all of it was commercial property.

We have not recited all of the testimony in detail but have attempted to summarize the evidence bearing on the issues made by the pleadings.

Based upon the record, the Master concluded, "The rezoning of the land in question is for the public good, the morals, and the general welfare of the City of Greenville and its citizens", and "That to deny the rezoning of the 'Wilson property' would be unreasonable, arbitrary, and not in conformity with the general principles of zoning and the rights of a property owner." The Master also found that the area here involved has essentially changed and, as a result, the property in question should be rezoned, citing the fact that

only recently there was a rezoning in order to allow the erection of a building for the First Federal Savings and Loan Association and for a filling station, both on the northern side of Wade Hampton Boulevard, and the shopping center designated as the Wade Hampton Shopping Center, immediately west of the property in question and on the southern side of Wade Hampton Boulevard.

Section 47-1001 of the Code authorizes the zoning of property within a municipality for the purpose of promoting health, safety, morals and the general welfare of the community therein. Section 47-1005 authorizes municipalities to amend such regulations, restrictions and boundaries after a public hearing in the manner authorized by Section 47-1004 of the Code. Hence, a municipality has the legislative power to amend its general zoning ordinance and rezone small areas, so long as its action is not arbitrary or unreasonable. *Momeier v. John McAlister, Inc.,* 231 S. C. 526, 99 S. E. (2d) 177. In amending its zoning ordinance, as it pertains to the Wilson property, the city council has complied with all procedural requirements as are set forth in the statute law of the State and the ordinance of the city pertaining thereto. However, the appellant does raise a question with respect to the written protests and objections made by a number of residents and landowners within the area here involved. Admittedly, these protests and objections were not filed within five days before the first public hearing, as required by the ordinance of the City of Greenville. It was proper for the city council of Greenville to disregard such written protests and objections because such were not timely filed. *Central Realty Corporation v. Allison,* 218 S. C. 435, 63 S. E. (2d) 153. The record here shows that on each reading of the amendatory ordinance, the vote was six in favor of the amendment and one against it. This was more than the three-fourths of the members of the city council of Greenville, including the Mayor and six aldermen. Had the protests and objections been filed within the time allowed by the ordinance, they would have been of no avail because more

than three-fourths of the council voted in favor of the amendment.

The authority of a municipality to enact zoning ordinances, restricting the use of privately owned property is founded in the police power. *Owens v. Smith,* 216 S. C. 382, 58 S. E. (2d) 332, and *James v. City of Greenville,* 227 S. C. 565, 88 S. E. (2d) 661. The governing bodies of municipalities clothed with authority to determine residential and industrial districts are better qualified by their knowledge of the situation to act upon such matters than are the Courts, and they will not be interfered with in the exercise of their police power to accomplish desired end unless there is plain violation of the constitutional rights of citizens. There is a strong presumption in favor of the validity of municipal zoning ordinances, and in favor of the validity of their application, and where the Planning and Zoning Commission and the city council of a municipality has acted after considering all of the facts, the Court should not disturb the finding unless such action is arbitrary, unreasonable, or in obvious abuse of its discretion, or unless it has acted illegally and in excess of its lawfully delegated authority. Likewise, the power to declare an ordinance invalid because it is so unreasonable as to impair or destroy constitutional rights is one which will be exercised carefully and cautiously, as it is not the function of the Court to pass upon the wisdom or expediency of municipal ordinances or regulations. *Talbot v. Myrtle Beach Board of Adjustment, et al.,* 222 S. C. 165, 72 S. E. (2d) 66.

A municipal zoning ordinance is presumably valid. *Momeier v. John McAlister, Inc.,* 231 S. C. 526, 99 S. E. (2d) 177; *City of Florence v. Turbeville,* 239 S. C. 126, 121 S. E. (2d) 437, 85 A. L. R. (2d) 1143. Hence, the burden of proof is upon the party attacking the amendment to establish that the acts of the city counsel were arbitrary, unreasonable and unjust. *Keller v. City of Council Bluffs,* 246 Iowa 202, 66 N. W. (2d) 113, 51 A. L. R. (2d) 251.

The Master has found, and such has been affirmed by the Circuit Judge, that the appellant has not sustained the burden of proof by showing that the action of the city council, in rezoning the property here in question, was arbitrary, unreasonable and unjust.

The Planning and Zoning Commission and the city council of Greenville concluded that the general welfare of the community would be advanced by reclassifying the property here in question from residential to commercial. The Master and the Circuit Judge likewise concur in such finding of fact. At the trial of the case before the Master, the appellant presented evidence which it contends shows that the rezoning of the Wilson property was arbitrary, unreasonable and an abuse of discretion on the part of the city council. The respondents presented evidence to the contrary. The Master and the Circuit Judge have found that the action of the city council was not arbitrary, unreasonable and unjust. Under the factual findings so made, the most that can be said is that whether that determination was unreasonable, arbitrary and unjust is fairly debatable. If the validity of the classification made for zoning purposes be fairly debatable, and we think it is, the legislative judgment must be allowed to control. *Euclid, Ohio v. Ambler Realty Company,* 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016.

It is the contention of the appellant that the rezoning of the Wilson property from residential to commercial constitutes "spot zoning" and, because of such, the amendatory ordinance was invalid. "Spot zoning" is a process of singling out a small parcel of land for use classification totally different from that of the surrounding area, for the benefit of owners of such property and to detriment of other owners. *Bartlett v. Middletown Township,* 51 N. J. Super. 239, 143 A. (2d) 778. It has been held that the granting of a special zoning permit extending area previously zoned for commercial use so as to embrace adjacent property zoned for residential use does not constitute spot zoning. *Neal v. City of Atlanta,* 212 Ga. 687, 94 S. E. (2d) 867. In

the case of *Eckes v. Board of Zoning Appeals,* 209 Md. 432, 121 A. (2d) 249, affirming the reclassification of a tract of land containing approximately eleven acres from residential to commercial for the erection of a shopping center, the Court held that it could not be considered as spot zoning where the proposed change is from one use to another and there was already a considerable amount of property adjoining the property sought to be reclassified falling within the proposed classification. In *Putney v. Township of Abington,* 176 Pa. Super. 463, 108 A. (2d) 134, affirming the rezoning of fifty-one acres of land from residential to commercial so that a shopping center could be built thereon, it was held that where such reclassification merely expanded an existing commercial area, it did not constitute spot zoning, since the amendatory ordinance did no more than create a commercial area similar to one created in the basic ordinance. It was further held that the amendatory ordinance was not a departure from the comprehensive zoning plan.

We conclude that the rezoning of the property in question was not spot zoning because the property immediately to the west thereof had been rezoned so that a shopping center could be built thereon. The rezoning here merely expanded an existing commercial area.

In the recent case of *Strong v. Winn-Dixie Stores, Inc.,* 240 S. C. 244, 125 S. E. (2d) 628, it was held that the Court has no power to zone property, and the right to zone is normally reserved under the police power to the legislative branches of government. In the case of *Talbot v. Myrtle Beach Board of Adjustment,* 222 S. C. 165, 72 S. E. (2d) 66, it was held that even though zoning boards are given wide discretion, its actions are subject to judicial review as to their validity.

We have carefully reviewed the entire record in this case and we think there is competent and substantial evidence to support the findings and conclusions of

the Master, which were concurred in by the Circuit Judge. This Court will not disturb, on appeal, such findings unless they are without evidentiary support or are against the clear preponderance of the evidence. *Carsten v. Wilson,* 241 S. C. 516, 129 S. E. (2d) 431.

We find no merit in the contention of the appellant that the rezoning ordinance amounts to a taking of its property for a private or public use without compensation therefor, and that it has been deprived of due process and the equal protection of the laws in violation of the State and Federal Constitutions.

It is the contention of the appellant that error was committed by the Master in failing to identify and separately report the evidence he ruled incompetent from that which he ruled competent. It appears that when the taking of the testimony began, each party objected to the testimony of the other, on the ground of irrelevancy, and then counsel for the parties, with the concurrence of the Master, agreed that all testimony offered would be subject to a standing objection.

In the Master's Report, he stated:

"I find that much testimony offered by both parties was irrelevant and incompetent. Both parties agreed that I must take all testimony, but that I had the right to consider only such testimony as I thought proper. I have done this, and, consequently, a large portion of the testimony and exhibits have been sifted as the 'chaff from the wheat'."

The appellant asserts that under Section 10-1409 of the Code, a Master is required to rule on objection to testimony and to separately report testimony ruled incompetent from that ruled competent.

In the case of *Cox v. First Provident Corporation,* 240 S. C. 130, 125 S. E. (2d) 1, this Court cited the case of *Pack v. Katzin,* 215 N. C. 233, 1 S. E. (2d) 566, and quoted the following therefrom:

"* * * The referee should enter his ruling on each objection, either at the time of taking the testimony, or subsequently, or in his report, to the end that it may be known whether the evidence objected to was considered or excluded from consideration in making his findings of fact. However, where the objections are made to a certain line of testimony, or to all testimony tending to show certain facts, it would be regarded as a compliance with this rule if the referee incorporates in his report a general statement of his rulings such as would afford the parties and the reviewing judge on exceptions filed full opportunity to consider the effect of the referee's ruling and to give proper weight to his findings from the evidence reported. * * *

"Considering the nature and purpose of the testimony heard by the referee in this case, we are unable to say that the defendants have been prejudiced by the manner in which the referee has made his report and noted his rulings."

The appellant does not, by any of its exceptions, charge the Master with error in considering any testimony alleged to be incompetent or refusing to consider any testimony alleged to be competent. Neither does it specify in any exception or in its brief the particular testimony which it contends to be irrelevant or incompetent and which it claims that the Master should not have considered but may have done so to its prejudice. Nor does appellant point out any evidence offered by it which it claims that the Master should have considered but may not have done so to its prejudice. Therefore, the appellant has not met the burden of establishing that it has been prejudiced by the Master's failure to expressly rule on objections to the evidence.

All of the exceptions of the appellant are overruled and the judgment below is affirmed.

Affirmed.

TAYLOR, C. J., and LEWIS and BRAILSFORD, JJ., concur.

Bussey, Justice (dissenting):

Finding myself unable to agree with the majority opinion and the result reached in this case, I feel impelled to set forth as concisely as possible my views thereabout.

The pivotal issue in this case is, not whether the City of Greenville has the right to amend its zoning ordinance, but whether here the city acted in contravention of the enabling statute, and in excess of the powers granted, in adopting the particular ordinance. The ordinance, of course, carries a presumption of validity, but voluminous evidence, both oral and documentary, tending to overcome the presumption of validity was offered on behalf of the appellant, and evidence, both documentary and oral, was offered by the respondents tending to support the validity of the particular ordinance.

The exhibits offered by the parties, not all of which were brought before us, were in excess of thirty. Much of the evidence, both oral and documentary, offered by the respective parties was objected to as being either irrelevant or incompetent or both. The Master complied with Section 10-1409 of the Code by receiving the evidence, but did not comply with the following provision of the statute, "shall hear and decide any objection which may be made to the competency, relevancy or admissibility of any testimony which may be offered." Neither did he in any manner attempt to separate the evidence deemed by him to be inadmissible. Instead, he found as a finding of fact, rather than a conclusion of law, that "much testimony offered by both parties was irrelevant and incompetent." He went on to say that "a large portion of the testimony and exhibits have been sifted as the chaff from the wheat."

With all due respect to the esteemed Master of long judicial experience, he did not furnish the litigants, the circuit court or this court any insight into his mental processes employed in sifting the "chaff" from the "wheat". He gives no guide or even intimation whatsoever as to what he deter-

mined to be "chaff" and what he determined to be "wheat", or how he arrived at such determination.

Since we are totally in the dark as to what the Master considered to be "wheat" and what the Master considered to be "chaff", I do not know how it is possible for either the circuit Court or this court to determine whether his findings of fact were based upon and supported by competent, relevant evidence or not. For the appellant here to have made specific exceptions as to the consideration of inadmissible evidence or the failure by the Master to consider admissible evidence, would have involved pure speculation on the part of the appellant since it was left totally in the dark as to what evidence the Master considered and what evidence he did not consider. Had it attempted to speculate and frame specific exceptions in this respect, such exceptions could not have been supported by the record since there is nothing to show what evidence was considered and what was not considered.

We, of course, held in the cited case of *Cox v. Fist Provident Corp.*, 240 S. C. 130, 125 S. E. (2d) 1, that the failure of the Master to there comply with Section 10-1409 was not shown to be prejudicial. The factual situation there was, however, totally different from the case at bar, the objection there being simply to one line of questioning. The North Carolina case of *Pack v. Katzin,* 215 N. C. 233, 1 S. E. (2d) 566, is likewise totally distinguishable from the instant case on the facts. Here, the objections went to much of the evidence offered by both of the parties and we are not given even any intimation as to the Master's rulings thereabout.

Much more nearly in point, I think, is the decision of the Georgia Supreme Court in the case of *Greer v. Andrew,* 133 Ga. 193, 65 S. E. 416. There the report of the auditor was much more nearly in accord with the provisions of a similar Georgia statute than is the report of the Master here. The Supreme Court reversed the lower court decision confirming the auditor's report and refusing to recommit it for failure to comply with the statutory provisions.

It seems clear to me that the purposes of Section 10-1409 are clearly twofold: (a) The master is required to receive evidence which he regards as inadmissible to the end that it will be unnecessary to recommit the matter for the purpose of a further reference should the reviewing Court conclude that the evidence was properly admissible (b). To require a ruling from the master as to the admissibility of evidence so as to afford the parties and the reviewing judge full opportunity to consider the effect of the referee's rulings and to give proper consideration to his findings from the evidence reported.

The decision of this court in *Elrod v. Elrod,* 230 S. C. 109, 94 S. E. (2d) 237, dealt with the first purpose of the statute, above stated, and held that it was reversible error for the master to refuse to take evidence which he deemed inadmissible. I think the second purpose of the statute is even more important than the first and that the Master committed reversible error in failing to incorporate in his report his rulings as to the admissibility of evidence. In the absence of such rulings, I do not see how the circuit court or this court could possibly intelligently review the record and determine whether the Master's findings of fact were based on competent, relevant, admissible testimony, or to the contrary, were arrived at by the failure to consider proper evidence or possibly the consideration of inadmissible evidence. It would seem to me that we could only speculate as to the mental processes employed by the Master in separating what he termed "wheat" from what he termed "chaff".

I would reverse and remand the cause for failure of the Master to comply with the statute. Doing so would make it unnecessary to now discuss most, if not all, of the other questions involved in the appeal. With respect to other questions, however, I wish to point out that in my humble opinion the affirmance of the judgment of the lower court, in accordance with the majority opinion, leaves unanswered very serious constitutional questions as to whether the appellant here has been accorded due process of law and whether the appellant

was denied the equal protection of the laws. In my view as to the proper disposition of the appeal, under the rule of restraint, it becomes unnecessary for me to discuss or attempt to decide these serious constitutional questions.