734 S.E.2d 306

**HISTORIC CHARLESTON FOUNDATION and Preservation Society of Charleston, Respondents,**

v.

**The CITY OF CHARLESTON, The City of Charleston City Council and Library Associates, LLC, Appellants.**

**Appellate Case No. 2010–179087.**

**No. 27181.**

Supreme Court of South Carolina.

Heard Nov. 3, 2011.
Decided Oct. 17, 2012.
Rehearing Denied Dec. 5, 2012.

Timothy Alan Domin, of Clawson & Staubes, of Charleston, and Frances Isaac Cantwell, of Regan and Cantwell, of Charleston, for Appellants.

Samia Hanafi Nettles and Edward K. Pritchard, III both of Pritchard & Elliott, of Charleston, and Lindsay Kathryn Smith–Yancey, Daniel Simmons McQueeney, Jr., and George Trenholm Walker, all of Pratt–Thomas Walker, of Charleston, for Respondents.

Justice PLEICONES.

This is an appeal from a master's order invalidating a City of Charleston zoning ordinance[1] on the ground it constituted illegal spot zoning. We reverse.[2]

1. Ordinance 2007–147.

2. Our disposition of this appeal moots the appeal in a related case. Accordingly, the appeal in *Historic Charleston Found. v. City of Charleston* is dismissed.

## FACTS

Appellant Library Associates purchased the building located at 404 King Street (404 King) which was formerly the main branch of the Charleston County Public Library. 404 King is bounded by King Street to the west, Tobacco Street to the south, and Hutson Street to the north, and backs to the Old Citadel on the east. The Old Citadel and 404 King are separated from Marion Square by Tobacco Street, an unopened right-of-way/pedestrian walkway that forms the north boundary of Marion Square, an approximately five acre park in the historic heart of Charleston. Marion Square is bordered on the west by King Street, on the south by Calhoun Street, and on the east by Meeting Street.

404 King faces King Street, but is visible in profile when looking north from Marion Square. Viewed in this way, the back of the property abuts the Old Citadel, which faces the park.

404 King was split-zoned: approximately 60% of the building, that part located towards King Street, was zoned 3X, permitting a building on that site to be 105 feet tall. The interior of the building that lies towards the Old Citadel was zoned 55/30, meaning the height could not exceed 55 feet nor could it be less than 30 feet high. The Old Citadel is also zoned 55/30, and is now the site of an Embassy Suites Hotel. Across King Street from 404 King are a number of buildings, including St. Matthews German Lutheran Church, a parking garage, and the Francis Marion Hotel. All properties are zoned 3X in the 400 block of King Street, meaning their maximum height is three times the distance from the facade of the building to the center of King Street. The evidence in the record indicates that St. Matthews' spire is 297 feet tall, that the parking garage is approximately 60 feet tall, and that the Francis Marion Hotel is around 165 feet tall.

404 King and the Old Citadel are bounded on the north by Hutson Street. Property along King Street north of Hutson is split zoned 55/30 towards King Street and 80/30 towards the interior on the 404 King side, and 55/30 on the opposite side. In mirror image fashion, the property bordering Meeting Street north of Hutson is also split zoned. North of Marion Square along the Meeting Street corridor, the property lying

on the west side of Meeting, that is towards King, is split zoned 55/30 facing Meeting and 80/30 towards the interior. The property on the east side of Meeting is zoned 55/30. This split-zoning scheme continues south of the square below the 400 block of King Street, and along Meeting Street south of the square, with the King/Meeting block split zoned and the property across the street zoned 55/30. 404 King was an anomaly in the area in that it was zoned taller towards King Street than towards its interior.

Charleston City Council adopted Zoning Ordinance 2007–147, which rezoned the entire 404 King property 3X. Respondents then brought this action challenging the ordinance's legality. The master invalidated the ordinance finding it was unlawful spot zoning. We reverse.

## DISCUSSION

 We have defined spot zoning as the "process of singling out a small parcel of land for use classification totally different from that of the surrounding area, for the benefit of the owners of that property and to the detriment of other owners." *Bob Jones Univ. v. City of Greenville*, 243 S.C. 351, 361, 133 S.E.2d 843, 848 (1963) cited with approval in *Knowles v. City of Aiken*, 305 S.C. 219, 407 S.E.2d 639 (1991). It is not unlawful spot zoning if "the proposed change is from one use to another and there is already a considerable amount of property adjoining the property to be reclassified falling within the proposed classification." *Id.* at 362, 133 S.E.2d at 848. For purposes of this opinion, we accept that although our cases speak in terms of "use classification" a variance in height classification may also constitute unlawful spot zoning.[3]

 The question therefore is whether the extension of the 3X height zoning designation from 60% of the 404 King property to 100% is unlawful spot zoning. It is true that ordinance 2007–147 singles out a small parcel of land, and that the rezoning benefits the owner who sought it. However, the application of the 3X height to the "back" 40% of 404 King is not a change from the property that literally adjoins it, that is,

---

3. Obviously the intended use of 404 King as a hotel is not a use variance given the proximity of the Francis Marion Hotel and the Embassy Suites to 404 King.

the front 60%. It is a change, however, from the Old Citadel zoning, which abuts the rear of 404 King. However, since every other property in the 400 block of King Street is zoned 3X, there is "a considerable amount of property adjoining . . . falling within the proposed classification" and thus the change to 3X for 404 King is not "totally different from the surrounding area." Ordinance 2007–0147 rezoning 404 King 3X is not spot zoning. *Knowles, supra; Bob Jones Univ., supra.*

Even if we were to find the ordinance constituted spot zoning, we must exercise judicial restraint before declaring it unlawful, keeping in mind the particular circumstances of the case. *Knowles, supra.* Zoning ordinances are presumed valid and the person attacking one bears the burden of showing the zoning decision is arbitrary, unreasonable, and unjust. *Bob Jones, supra.* In passing on the validity of a zoning ordinance, it is not within a court's prerogative to pass upon the wisdom or expediency of the municipality's decision. *Rush v. City of Greenville,* 246 S.C. 268, 276, 143 S.E.2d 527, 531 (1965) citing *Bob Jones, supra.* Respondents did not meet their heavy burden here.

## CONCLUSION

The order finding ordinance 2007–147 invalid is
**REVERSED.**

BEATTY, J., and Acting Justice JAMES E. MOORE, concur.

HEARN, J., dissenting in a separate opinion in which Acting Justice ALEXANDER S. MACAULAY, concurs.

Justice HEARN.

In my opinion, the majority gives short shrift to the history of historic preservation in the City of Charleston and the Upper King Street neighborhood, thereby ignoring the City's steady march away from excessively permissive height designations and towards zoning classifications that are in accord with its uniquely historic fabric. Because the ordinance in question here changes the zoning of a single piece of property to a classification not consonant with the surrounding area and

completely at odds with the City's central planning documents, I would affirm the master-in-equity's finding that the ordinance constitutes illegal spot zoning. I therefore respectfully dissent.[4]

## I.

Library Associates, LLC purchased property located at 404 King Street, in the Upper King neighborhood of Charleston, which currently houses the old Charleston County Library.[5] 404 King Street sits prominently on the northern boundary of Marion Square, a five-acre public park in the heart of downtown Charleston. The park lies at the intersection of three major thoroughfares in the City: King Street, Meeting Street, and Calhoun Street. Marion Square also is the former Citadel parade grounds. Consequently, the Old Citadel building—which is now an Embassy Suites Hotel—sits adjacent to 404 King Street on the park's northern boundary. It too directly faces Marion Square.

Standing on the southern edge of Marion Square and looking north, one has a direct and unimpeded view of 404 King Street and the Old Citadel over the open park. Directly across King Street from 404 King is St. Matthew's Lutheran Church, which opened its doors in 1872 and whose spire extends some 297 feet into the air. Heading south towards Calhoun Street, one finds a municipal parking garage and the Francis Marion Hotel, a narrow building circa 1924 which rises 165 feet.

I now pick up where the majority leaves off, which is with the history of zoning regulation in Charleston. Prior to 2006, much of the Upper King neighborhood was zoned 3X with no cohesive scheme in mind. Under 3X zoning, the maximum height of a building on the property is three times the distance from the façade of the building to the center of the right-of-way in front of it. For some properties in Upper King, this could permit heights up to a couple hundred feet. The City

---

4. I reluctantly agree with the majority that its disposition of this case moots the appeal in *Historic Charleston Foundation v. City of Charleston*, Appellate Case No. 2010–169246.

5. This building is a relic from the 1960s which sits unused and boarded up.

began its efforts to address this problem in 1982, when it first started planning for the redevelopment of Marion Square. At the time, the City advocated containing the square with building walls, but those buildings were to be no higher than four to six stories. In 1989, City planning documents expressly recognized "[i]t is important that the traditional scale of Charleston be maintained along Calhoun Street. Carefully designed building massing, height, and location with respect to the street can maintain the corridor's visible and traditional scale." Accordingly, low-frame buildings ranging from two to four stories were prevalent, and "[h]igher structures were reserved for symbolic features like steeples, towers, or cupolas."

In 1991, the City officially adopted the Charleston 2000 plan as the City's central planning document. In it, the City noted that the 3X height designation is "too permissive" and needed to be reevaluated. Indeed, one of the specific goals of Charleston 2000 was to "[f]oster development of a city with building heights which ... respect the historic downtown fabric." To that end, the City adopted the Downtown Plan in 1999 as an update to Charleston 2000. Although this plan is not a set of specific guidelines, it outlines the broader development strategy the City is to follow. This strategy specifically identifies Marion Square as "one of the premier open spaces on the peninsula" and "[s]ites around the edges of the park will soon be among the most desirable in downtown." One study even referred to 404 King Street itself as "an excellent gateway to the Upper King Street area."

The Downtown Plan characterizes Charleston's skyline as having "lower buildings along the water edges with higher built spines along King, Meeting, and Calhoun Streets. Towers and spires punctuate the horizon, signaling important buildings, the termination of vistas, and accentuating subtle shifts in the street pattern." However, the Plan specifically mentions that the 3X height zone is "potentially too high to be compatible with the existing city fabric and may be inappropriate" because it is "overly permissive." In that vein, it specifically calls for the heights along King and Meeting Street corridors to be reined in and replaced with something better suited to preserving the City's historic skyline.

The Plan, however, does provide for some exceptions to this general rule disfavoring tall buildings:

Certain sites offer the opportunity to articulate important places in the urban fabric, to give special prominence to important buildings, and to provide a varied skyline. Such landmarks are appropriate at important street corners, at the termination of key streets and vistas, or in places where streets change direction. These landmarks are consistent with the tradition in historic Charleston, as seen in the church spires, Market Hall, and the Charleston Place clock tower.

In these locations, the Plan proposes to allow discreet architectural elements exceeding the zoning height limit. Small projections must be subject to a detailed urban design study demonstrating the appropriateness of the site, and the preservation of vistas and skyline integrity. A careful review and approval process is required for each proposal. There may also be an opportunity for modest height increases throughout the peninsula, and particularly in focal points, subject to a detailed study.

Thus, even though the plan allows for some extra building height, any increase must be in accordance with the Plan's goal of encouraging historic preservation. Furthermore, when discussing Marion Square, and immediately after referring to 404 King Street, the Plan cautioned, "As new development is planned and designed, particular attention should be paid to preserving the prominence of the church steeples, the old Citadel building and the 'Calhoun Column' on the skyline."

The first proposal for a wide-scale rezoning of this area in order to bring the King and Meeting Street corridors in line with the lower height districts below Calhoun Street pursuant to the Downtown Plan was made before the City of Charleston City Council in 2005. There was one main exception to this proposal: the area around Marion Square with 404 King Street, St. Matthew's, and the Francis Marion Hotel would remain unchanged. At the time, 404 King Street was split-zoned, meaning it had two different zoning restrictions for a single lot. Approximately sixty percent of the property was zoned 3X, and the remainder was zoned 55/30. For 404 King Street, 3X zoning permits a maximum height of 105 feet. Under 55/30 zoning, the building may be no higher than fifty-

five feet and no shorter than thirty feet.[6] Across King Street, St. Matthew's, the parking garage, and the Francis Marion Hotel were all zoned 3X.

When this ordinance effecting a broad change in the district's zoning came up for a final vote in 2006, Charleston Mayor Joseph P. Riley, Jr., advocated the broad elimination of the 3X height district because it is a "relic" and "prehistoric." The City Council agreed and passed the ordinance, meaning 404 King Street, St. Matthew's, the parking garage, and the Francis Marion Hotel were the only properties in the vicinity with at least part of the property zoned 3X.

The Old Citadel currently is zoned 55/30, although its actual height is somewhere slightly over sixty feet. Heading north and south along both King and Meeting Streets, which run right down the center of the peninsula, the interior of the block between these streets is generally zoned 80/30, which permits a maximum height of eighty feet and a minimum of thirty feet. Directly on these major thoroughfares, the zoning is 55/30.[7] Outside of the 55/30 zone, the remainder of this part of Charleston is zoned 50/25. When pieced together, the current zoning regulations accordingly create a column of 80/30 between King and Meeting Streets, stepping down to 55/30 along these streets, and then further stepping down to 50/25 as one travels towards the edges of the peninsula.

Despite refusing to change the zoning of 404 King Street in 2006, in 2007 the City initiated the rezoning of this property so that the entire parcel would be zoned 3X. The purpose behind zoning the entire property 3X was to open up the possibility for Library Associates to build a large, full-service hotel on the lot. The present proposal calls for a 185–room, nine story building to be erected, with its main entrance facing Marion

---

6. When applied to 404 King Street, this results in an envelope shaped like a large "L," with the higher 105 feet zoning amassed along King Street, while the interior of the site approaching the Old Citadel drops down to a maximum of fifty-five feet. Due to the openness of Marion Square, the full profile of the L is visible when looking north from the park.

7. Many of the buildings fronting the west side of King Street and the east side of Meeting Street are therefore split-zoned, with the higher 80/30 zone for the rear portion stepping down to 55/30 along the street. This is the exact opposite arrangement of 404 King Street.

Square.[8] Following public hearings and a referral to the City's Planning Commission, the City Council adopted the proposed ordinance, which applied only to 404 King Street and did not rezone any other property in the City. The Historic Charleston Foundation and the Preservation Society of Charleston (collectively, Respondents) then brought the present action challenging the ordinance.

With this important context in mind, I turn to the question of whether rezoning 404 King Street to 3X in its entirety constitutes illegal spot zoning.

## II.

Our inquiry here is a two-step process. We must first determine whether the ordinance in question is spot zoning in the first instance. Spot zoning is "the 'process of singling out a small parcel of land for use classification totally different from that of the surrounding area, for the benefit of owners of such property and to [the] detriment of other owners.'" *Knowles v. City of Aiken*, 305 S.C. 219, 221, 407 S.E.2d 639, 641 (1991) (quoting *Bob Jones Univ., Inc. v. City of Greenville*, 243 S.C. 351, 361, 133 S.E.2d 843, 848 (1963)). Thus, if an ordinance changes the zoning of a small area to a classification not consistent with the area, it is spot zoning. *Talbot v. Myrtle Beach Bd. of Adjustment*, 222 S.C. 165, 175, 72 S.E.2d 66, 71 (1952) ("[W]here an ordinance establishes a small area within the limits of a zone in which are permitted uses different from or inconsistent with those permitted within the larger."). Conversely, "it could not be considered as spot zoning where the proposed change is from one use to another and there was already a considerable amount of property adjoining the property sought to be reclassified falling within the proposed classification." *Bob Jones*, 243 S.C. at 362, 133 S.E.2d at 848.

Where a zoning ordinance expands an existing classification, it generally is not spot zoning. *See Lurey v. City of Laurens*, 265 S.C. 217, 220, 217 S.E.2d 226, 227 (1975) (suggesting an

---

8. By all accounts, the proposed structure is a handsome, albeit large, building. This is only a provisional proposal, however, and the building plans are subject to final approval by the Board of Architectural Review.

ordinance was not spot zoning because the amendment did not create a new district but merely expanded the existing one); *Bob Jones,* 243 S.C. at 362, 133 S.E.2d at 848 ("We conclude that the rezoning of the property in question was not spot zoning because the property immediately to the west thereof had been rezoned so that a shopping center could be built thereon. The rezoning here merely expanded an existing commercial area."). However, "not 'every extension of an existing district is, ipso facto, ... not spot zoning.'" *Konigsberg v. Bd. of Aldermen of City of New Haven,* 283 Conn. 553, 930 A.2d 1, 24 (2007) (quoting *Wade v. Town Plan & Zoning Comm'n of Town of Hamden,* 145 Conn. 592, 145 A.2d 597, 600 (1958)). Instead, the ultimate consideration is whether an extension is "an orderly development of an existing district which serves the public need in a reasonable way or whether it is an attempt to accommodate an individual property owner." [9] *Wade,* 145 A.2d at 600.

Thus, spot zoning itself is not improper. In order for it to become unlawful, it must "not form a part of a comprehensive plan of zoning or [be] for mere private gain as distinguished from the good of the common welfare." *Talbot,* 222 S.C. at 175, 72 S.E.2d at 71. "The vice of spot zoning lies in the fact that it singles out for special treatment a lot or a small area in a way that does not further such a [comprehensive] plan." *Gaida v. Planning & Zoning Comm'n of City of Shelton,* 108 Conn.App. 19, 947 A.2d 361, 369 (2008) (quotations omitted). The very purpose behind requiring conformance to a comprehensive plan is "to prevent the arbitrary, unreasonable and discriminatory exercise of the zoning power" and to "serve[ ] as an effective brake on spot zoning." *Summ v. Zoning Comm'n of Town of Ridgefield,* 150 Conn. 79, 186 A.2d 160,

---

9. In *Bob Jones,* for example, the ordinance under review was not spot zoning because the majority of properties in the vicinity were already zoned in accordance with the proposed classification. *See* 243 S.C. at 357, 133 S.E.2d at 845–46. The ordinance examined in *Lurey* survived judicial review not because it was not spot zoning, but because it also met a public need for a hospital expansion. *See* 265 S.C. at 220, 217 S.E.2d at 227. Thus, this ordinance constituted *legal* spot zoning. *See Talbot,* 222 S.C. at 175, 72 S.E.2d at 71 (stating spot zoning "is invalid where the ordinance does not form a part of a comprehensive plan of zoning or is for mere private gain as distinguished from the *good of the common welfare* " (emphasis added, quotations omitted)).

164 (1962). Stated another way, the singling out of a small parcel for treatment different than the surrounding uses is "the very antithesis of planned zoning." *Rodgers v. Vill. of Tarrytown*, 302 N.Y. 115, 96 N.E.2d 731, 735 (1951). As we therefore said in *Knowles*, "the appropriate analysis is to closely scrutinize the following factors: (1) the adherence of the zoning to the City's comprehensive plan; and (2) promotion of the good of the common welfare." 305 S.C. at 223, 407 S.E.2d at 642.

In undertaking this analysis, we must be mindful that zoning ordinances are legislative functions and therefore "entitled to the presumption of legislative validity." *Hampton v. Richland Cnty.*, 292 S.C. 500, 507, 357 S.E.2d 463, 467 (Ct. App.1987). Thus, "[i]n order to successfully assault a city's zoning decision, a citizen must establish that the decision was arbitrary and unreasonable." *Knowles*, 305 S.C. at 224, 407 S.E.2d at 642. The party attacking the zoning ordinance bears the burden of proving its invalidity by clear and convincing evidence. *Town of Scranton v. Willoughby*, 306 S.C. 421, 422, 412 S.E.2d 424, 425 (1991) (per curiam). In undertaking this analysis, we "cannot become city planners but can only correct injustices when they are clearly shown to result from the municipal action." *Talbot*, 222 S.C. at 175, 72 S.E.2d at 70. Therefore, so long as the validity of the zoning classification is "fairly debatable," "the legislative judgment must be allowed to control." *Bob Jones*, 243 S.C. at 361, 133 S.E.2d at 848; *see also Knowles*, 305 S.C. at 224, 407 S.E.2d at 642 ("Courts have no prerogative to pass upon the wisdom of the municipality's decision unless such decision is so unreasonable as to impair or destroy [a] citizen's constitutional rights[ ] and the decision should not be overturned by a court so long as the decision is fairly debatable." (quotations omitted)).

## A.

Turning first to whether the ordinance constitutes spot zoning, I believe Respondents have introduced clear and convincing evidence that it does.

Although the majority writes that "every other property in the 400 block of King Street is zoned 3X," this characterization is quite misleading as there are only four properties on the

entire block: 404 King Street, St. Matthews, the parking garage, and the Francis Marion Hotel. Furthermore, even a cursory review of the record reveals that these properties are the *only* ones in the area zoned 3X. Beyond this, every single other property, including the only property actually adjoining 404 King Street, is zoned for a lower height, and in many instances a much lower height. It therefore cannot be maintained that there is a "considerable amount of property" already zoned 3X. Quite to the contrary, there is a notable absence of similarly zoned property in the Upper King Street neighborhood.

Moreover, the mere existence of *some* property in the vicinity zoned 3X is not, by itself, dispositive. *See Konigsberg,* 930 A.2d at 24 ("[N]ot every extension of an existing district is, ipso facto, . . . not spot zoning." (internal quotations omitted)). Instead, we must look to the general character of the neighborhood. Otherwise, a city could simply use an anchor property to expand a zoning designation one property at a time while wholly avoiding the prohibition against spot zoning without regard to the neighborhood or why that property has the zoning designation to begin with. But this is precisely what the majority permits Library Associates to do. Under the majority's view, Library Associates can automatically bootstrap the zoning from these three properties despite the fact that these other properties are themselves anomalies, vestiges of the old height classifications that underwent a wholesale change in 2006. Indeed, the City had only recently lowered the height of the surrounding buildings when it sought to increase the height of 404 King Street. Moreover, St. Matthews and the Francis Marion Hotel are tall, historic buildings constructed long before the current zoning ordinances were enacted.

Based on the facts presented, it is readily apparent that the ordinance in question changes the zoning of 404 King Street to one totally different than the surrounding area. This change also was effected to benefit Library Associates at the detriment of the surrounding property owners, whose smaller historic structures will be dwarfed and overshadowed by the new building. Accordingly, I believe the ordinance constitutes spot zoning.

## B.

As to whether the ordinance is illegal spot zoning and thus not consonant with the City's development plan, I note at the outset that the City's planning documents reveal competing considerations when it comes to height zoning. On the one hand, the City desires to maintain the momentum behind the revitalization of Upper King Street and encourage more productive use of the lots in that neighborhood. The Downtown Plan even called 404 King Street an "excellent gateway" and unique opportunity for this part of town that happens to be well-suited for high-intensity use. On the other hand, Charleston is a city deeply steeped in a rich and vibrant history that must be preserved. Indeed, what makes Charleston such a desirable place to live, work, and visit is its storied past and well-preserved buildings.

The parties introduced much evidence regarding whether a full-service hotel of this size would serve the business and social needs of Charleston. Should Library Associates decide to build something else besides a hotel, I am sure that it too would be an economic boon to the area. Nevertheless, the City cannot simply choose to promote revitalization and ignore its longstanding practice of historic preservation. Woven throughout every single planning document is a general tenor of respect for the historical fabric of the City and an overarching policy of deference to historic buildings. The City's 1974 Historic Preservation Ordinance, as read by one of Respondents' expert witnesses, Professor William Cook, put it poignantly: "A vital part of the total City scene not to be really tampered with is the skyline. Punctuated with beautiful steeples of historic churches, they add immeasurably to the harmony of building heights, which is only occasionally [s]poiled by modern intrusions." In fact, the push behind generally eliminating the 3X height district was due to the potential of tall buildings dominating the historic skyline.

As the 3–D models appearing in the record show, a building filling the 3X design envelope at 404 King Street would be a substantial one that would not give the required deference to the Old Citadel, over which it would rise some forty feet, and the buildings behind it on King Street, which themselves are only approximately three stories tall. Furthermore, the

Downtown Plan's statements permitting higher buildings were couched in terms of objects that "punctuate" the skyline and "small projections," such as church spires and clock towers. In contrast, a building fully occupying the 3X zone at 404 King Street will be a hulking mass rising far above the surrounding properties that will dominate the skyline, topped only by just a few narrow buildings and spires. The property's prominence across an open public square also makes it difficult to mask the building's height, especially when it is contrasted to the smaller Old Citadel building immediately beside it. Finally, the plan spoke of potential height increases in terms of them being "modest." For 404 King, the maximum height nearly doubled.

Thus, while it may be fairly debatable whether a large building is necessary for the continued development of Upper King, it is clear that a 105–foot building on this site would not be in accord with the Plan's requirement of deference to historical structures and respect for the skyline. I certainly am mindful of our role as a court and the admonition that we not become city planners, as well as the high burden a challenger must meet. In purporting to find the ordinance lawful even if it is spot zoning, the majority hides behind this standard and simply writes that we must "keep[ ] in mind the particular circumstances of the case." Yet this is exactly what the majority avoids doing, opting instead to allow the City to blatantly ignore its own duly adopted plan. While I respect the tough decisions the City must make to harmonize the competing concerns identified in the Downtown Plan, those concerns still must be harmonized. I simply cannot join the majority in permitting the City to arbitrarily disregard its longstanding policies regarding historic preservation in the name of economic development. This is not the imposition of my own judgment over the wisdom of the City's judgment; rather, I would do what the majority does not and hold the City to its plan. I would therefore find the ordinance is illegal spot zoning.

### III.

For the foregoing reasons, I would affirm the master's order and hold that the ordinance in question constitutes illegal spot zoning. To be clear, I do not believe the City is

forever barred from raising the height classification of 404 King Street or any other building. Any such increase, however, must serve the twin goals of promoting development *and* respecting the historic skyline of the City. The City's own planning documents require this, and I would hold that the City must abide by them.

Acting Justice ALEXANDER S. MACAULAY, concurs.