No. 57,220

RAYMOND H. DINGS, *Appellant*, v. ELDON PHILLIPS, TOM LINOT, J. W. SIMMONS, as Board of County Commissioners, and OWEN F. O'DONNELL, County Clerk for Butler County, Kansas, JOHN CAMERON, COLALINE MIKISH, FRANK HALES, KENNETH WEBER, ALAN PATTERSON, ROBERT PATTERSON, CURTIS WILLHITE, TED DONHUT, CHARLES PETREE, as Members of the Butler County, Kansas (Zoning Board) Planning Board and JOHN TIPTON, Zoning Officer, *Appellees*.

(701 P.2d 961)

Opinion filed June 21, 1985.

*R. A. Munroe,* of Augusta, argued the cause and was on the brief for appellant.

*Norman G. Manley,* Butler County Counselor, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

MCFARLAND, J.: Plaintiff Raymond H. Dings is the owner of an 80-acre tract in Butler County. Mr. Dings sought to change the zoning on the tract from A-1 General Agricultural District to R-1 Single Family Residential District in order to establish a mobile home subdivision. The zoning change was denied by the Butler County Planning Board and, ultimately, by the Board of County Commissioners. Mr. Dings was dissatisfied with this result and filed an action in the district court challenging the propriety of the actions of the Zoning Board and the Board of County Commissioners. Although designated as an action in mandamus, the action is, in actuality, an appeal from the adverse decision of the defendant Board of County Commissioners. The district court affirmed the action of the defendant Board of County Commis-

sioners (hereinafter referred to as "Board"). Mr. Dings appeals from this judgment.

The rules relative to the scope of judicial review in zoning matters were summarized in *Combined Investment Co. v. Board of Butler County Comm'rs*, 227 Kan. 17, 605 P.2d 533 (1980), as follows:

"(1) The local zoning authority, and not the court, has the right to prescribe, change or refuse to change, zoning.

"(2) The district court's power is limited to determining (a) the lawfulness of the action taken, and (b) the reasonableness of such action.

"(3) There is a presumption that the zoning authority acted reasonably.

"(4) The landowner has the burden of proving unreasonableness by a preponderance of the evidence.

"(5) A court may not substitute its judgment for that of the administrative body, and should not declare the action unreasonable unless clearly compelled to do so by the evidence.

"(6) Action is unreasonable when it is so arbitrary that it can be said it was taken without regard to the benefit or harm involved to the community at large, including all interested parties, and was so wide of the mark that its unreasonableness lies outside the realm of fair debate.

"(7) Whether action is reasonable or not is a question of law, to be determined upon the basis of the facts which were presented to the zoning authority.

"(8) An appellate court must make the same review of the zoning authority's action as did the district court." 227 Kan. at 28.

The requested zoning change was denied out of concern over the adequacy of the water supply to the area. The concern was essentially twofold—concern over adequacy of water available to the proposed subdivision and concern over the impact of the proposed zoning change on the water supply of other properties in the area.

Mr. Dings asserts that the matter of water availability was an improper consideration of the Board—particularly as to the effect of the proposed subdivision on the water supply of neighboring properties. It is the position of Mr. Dings that the entire subject of water availability is exclusively a matter for the State Board of Agriculture, Division of Water Resources, to resolve and it was improperly considered by the Board herein. The logic of this contention is difficult to follow.

K.S.A. 19-2916a deals with the making and adoption by county planning boards of an "official comprehensive plan for the coordinated development of the county in accordance with the present and future needs and to conserve the natural resources . . ., insure efficient expenditure of public funds and

promote the health, safety, convenience, prosperity and general welfare of the inhabitants."

In *Golden v. City of Overland Park,* 224 Kan. 591, 584 P.2d 130 (1978), we stated:

"[W]hat factors, generally, should a zoning body consider in hearing a request for change? The trial court enumerated six factors to be considered in determining whether a zoning ordinance is invalid because it precludes all reasonable use of the subject property. These factors are ones which it would be well for a zoning body to bear in mind when hearing requests for change. They are:

 (1) The character of the neighborhood;

 (2) the zoning and uses of properties nearby;

 (3) the suitability of the subject property for the uses to which it has been restricted;

 (4) the extent to which removal of the restrictions will detrimentally affect nearby property;

 (5) the length of time the subject property has remained vacant as zoned; and

 (6) the relative gain to the public health, safety, and welfare by a destruction of the value of plaintiff's property as compared to the hardship imposed upon the individual landowner.

"To these we would add a consideration of the recommendations of permanent or professional staff, and the conformance of the requested change to the adopted or recognized master plan being utilized by the city. Master or comprehensive plans for the development of both cities and counties are authorized by the legislature, K.S.A. 12-704, K.S.A. 19-2916a. The legislature has stressed the making of such plans, and we believe they should not be overlooked when changes in zoning are under consideration." 224 Kan. at 597-98.

Without hesitation we conclude the availability of water, both to the subject property and other area properties, is a proper consideration of a zoning body hearing a request for a zoning change. Indeed, refusal to consider water availability would usually constitute arbitrary action by a zoning body in determining a requested zoning change.

We now turn to the issue of whether the Board's denial of the requested zoning change, based upon concern over water availability, was unreasonable under the evidence presented.

Considerable testimony concerning the geological nature of the area relative to ground water was introduced. The aquifer involved is limestone. Water collects in cracks and fissures of the limestone, and, naturally, well placement is critical as the locating of water is wholly dependent on the drilling into a crack or fissure. The depth at which water may be found and the amount of water available to any well varies considerably with the different wells in the area. This situation was contrasted with an

equus bed aquifer where the water in an area is contained in sand or gravel strata and exists throughout an area at essentially the same depth.

All of the wells in the area in question are "crack" wells whose water supply is sharply affected by rainfall conditions. Owners of neighboring properties had experienced severe water deficiencies in dry years and were concerned over what effect the increased water usage, entailed by the proposed zoning change, would have on their water supply. Essentially the matter came down to the zoning bodies' concern over whether the crack wells which would supply the subject property would be adequate, and whether such wells were interconnected with water sources supplying other area properties. Many area residents expressed their concern over the impact on their water supplies from the increased water usage inherent in the proposed zoning change. The Zoning Board proposed means to scientifically resolve the issue. Specifically, Dings was to drill a number of test wells, draw down water therefrom for a 24-hour continuous period and then determine what, if any, effect such activities had in the water levels in area wells. Dings only partially complied with this request. Fewer than the requested number of test wells were drilled, the draw down time was 12 hours in length rather than 24, and no attempt was made to determine the effect of these activities on area wells not on the subject property. Dings' expert testified the water supply would probably be adequate for all users if the wells were not connected, and that acidity tests would determine if the wells had common sources of supply. No such tests were made.

It is undisputed the subject property could not receive water from the area's rural water district and was wholly dependent on crack wells to be located on the property itself.

As previously noted, Dings has the burden of proving by a preponderance of the evidence that the Board's denial of his requested zoning change was unreasonable. We conclude that Dings has failed to carry this burden. The Board had legitimate concerns over the availability of water and its determination that Dings had failed to satisfy those concerns is supported by the evidence. All other issues raised in this appeal have been considered and are held to be without merit. The district court did

not err in affirming the decision of the defendant Board denying the requested zoning change.

The judgment is affirmed.