0785

Dr. A. G. HAMPTON and The Krystal Company, Appellants v. RICHLAND COUNTY, Richland County Council and its members, Jimmy Bales, James R. Barber, Jr., A. T. Butler, Sr., John F. Camp, Leone Castles, Tom Elliott, Warren Giese, John V. Green, James C. Leventis, Billy E. Taylor and Candy Y. Waites, Respondents.

(357 S. E. (2d) 463)

Court of Appeals

*A. Camden Lewis,* of *Lewis, Babcock, Gregory and Pleicones,* Columbia, *for appellants.*

*C. Dennis Aughtry,* of *Richland Co. Atty.'s Office, for respondents.*

Reheard Dec. 16, 1986.

Decided April 13, 1987.

Goolsby, Judge:

This is an action in mandamus brought by the appellants A. G. Hampton and Krystal Company against the respondents Richland County, Richland County Council, and members of the Richland County Council to compel the rezoning of certain property, which is owned by Hampton and subject to a contract of sale to Krystal, as a C-3 General Commercial District. County Council rezoned the property as a C-1 Office and Institutional District. The Circuit Court refused to require County Council to rezone the property as C-3. The dispositive issue is whether County Council's action in rezoning the property as C-1 was arbitrary, unreasonable, and capricious. We affirm.

Hampton and Krystal executed a contract for the sale of a tract of land on Garner's Ferry Road just outside of the City of Columbia. The property adjoins property to the northwest zoned as C-3 and property to the southeast zoned as a RS-1 Single Family Residential District. Krystal hopes to build a fast-food restaurant on the property.

In 1982, Hampton and Krystal sought to have County Council rezone the subject property from a D-1 Development District to C-3. County Council refused to do so. Hampton and Krystal then brought suit to compel County Council to rezone the property as requested.

After conducting a hearing in which testimony was taken and exhibits were offered, the Circuit Court, rather than require County Council to rezone the subject property as C-3, ordered County Council to exercise its discretion in changing the property's classification from D-1 to something else. The Circuit Court, however, reserved jurisdiction to determine the issue of reasonableness of the classification given the property by County Council upon rezoning it.

County Council changed the zoning classification of the subject property to C-1. It did so even though the Richland County Planning Commission recommended that the property be rezoned as C-3.

Because a C-1 classification does not permit property to be used as a fast-food restaurant, Hampton and Krystal then renewed their demand that County Council be compelled to rezone the subject property as C-3, a classification which does permit such a use. They renewed their demand both by motion in their original action and by instituting another action.

The Circuit Court ordered the two actions consolidated since they raised the same issue. It later dismissed both actions, holding that County Council acted reasonably and within its sound discretion in rezoning the subject property as C-1.

Our Supreme Court stated in *Rushing v. City of Greenville*, 265 S. C. 285, 283, 217 S. E. (2d) 797, 799 (1975), that the action of a municipality regarding the rezoning of property will not be overturned by a court if the municipality's decision is "fairly debatable." This is because the municipality's action is presumed to have been validly exercised and because it is not the court's prerogative to pass upon the wisdom of the municipality's decision. Only where the municipality's action is "so unreasonable as to impair or destroy constitutional rights" [*Rush v. City of Greenville*, 246 S. C. 268, 276, 143 S. E. (2d) 527, 531 (1965)] will the court declare the municipality's action unconstitutional. *Rushing v. City of Greenville, supra.*

We hold that the action of County Council in declining to change the zoning classification of the Hampton property from D-1 to C-3 and in changing the zoning classification of the property to C-1 is not patently unreasonable.

Unlike the subject property in *Rushing*, the subject property in this case is not surrounded by commercial property. Rather, as the record shows, it lies next to property zoned commercial to the nortwest and adjoins property zoned residential to the southeast. The effect of County Council's decision to reclassify the property as C-1 is to create a buffer of sorts between the two zones it lies between. This decision strikes us as a "fairly debatable" one.

The record also discloses that within a C-1 zone an owner may locate upon his property offices, photography studios, art galleries, antique shops, ethical pharmacies, hospitals, nursing homes, legitimate theaters, funeral homes, schools, colleges, churches, and private clubs, among other things. Indeed, many of the uses allowed by a C-1 classification mirror those permitted by a C-3 classification. A C-1 classification, therefore, clearly permits a beneficial use of the subject property by its owner.

While the C-1 classification may not permit the most profitable use of the subject property, "a property owner is not entitled to have his property zoned for its most profit-

able use." 101A C. J. S. *Zoning & Land Planning* § 47b at 173 (1979); *see Ohoopee Land Development Corp. v. Mayor & Council of Wrightsville*, 248 Ga. 96, 281 S. E. (2d) 529 (1981) (a zoning classification is not unconstitutional simply because a developer is deprived of a more profitable use of his property).

A classification of property should be upheld as constitutional, absent evidence that the classification is either unnecessary or confiscatory. *See Golden v. Planning Bd. of Town of Ramapo*, 30 N. Y. (2d) 359, 334 N. Y. S. (2d) 138, 285 N. E. (2d) 291, 63 A. L. R. (3d) 1157 (1972), *appeal dismissed*, 409 U. S. 1003, 93 S. Ct. 440, 34 L. Ed. (2d) 294 (1972) (ordinance limiting the use of property will not be held unconstitutional unless it is shown to be unreasonable in terms of necessity or to have caused such a diminution in value as to be tantamount to confiscation). Here, the owners, as it was their burden to do, offered no evidence that the classification suffered from either constitutional infirmity. *See Bob Jones University v. City of Greenville*, 243 S. C. 351, 133 S. E. (2d) 843 (1963), *appeal dismissed*, 378 U. S. 581, 84 S. Ct. 1913, 12 L. Ed. (2d) 1036 (1964) (burden of proving invalidity of zoning ordinance is on the party attacking it).

We are aware of the contention made by Hampton and Krystal that "the evidence is that the subject property would be valueless without the [C-3] classification." The record does not show that the property can be beneficially used only if it is zoned as C-3. It does show, however, the following:

> Q. Would you just turn to His Honor and tell him what that property's value would be if it were not zoned commercial?
> A. Essentially, there is no other use for the property other than that realistically speaking.
>
> . . . . .
>
> Q. And, in your opinion as a real estate broker, is there any other use other than commercial use for the subject property?
> A. No, sir, there is not.

A C-1 classification, however, clearly permits property to be used for commercial purposes.

There is, moreover, no testimony or other evidence that the subject property would have no market value if it were classified as C-1. Hampton's and Krystal's expert real estate witness, Henry J. Ritmeester, Jr., was never asked his opinion regarding the fair market value of the property if it were classified as C-1. He was only asked whether it would have any market value zoned as D-1.

In view of the many commercial uses that a C-1 classification allows and the expert's strong opinion that the subject property "essentially [has] no other use ... realistically speaking" other than as a commercial use, we seriously doubt that testimony or evidence that the property would be worthless zoned as C-1 would have credibility to any fair-minded fact finder, especially since many of the uses permitted by a C-1 classification duplicate those of a C-3 classification.

By showing that the subject property is adaptable to C-3 uses, Hampton and Krystal necessarily established that the property is adaptable to C-1 uses of identical character. *Cf. Greenville County v. Stover,* 198 S. C. 240, 17 S. E. (2d) 535 (1941) (proof of a plaintiff's cause of action can be supplied by a defendant and a defendant's defense can be established by the plaintiff).For instance, Richland County's zoning laws make no distinction between an office built on property zoned as C-1 and an office built on property zoned as C-3. Also, a funeral home resting upon a C-1 tract is no less a funeral home than one situated upon a C-3 tract.

We therefore uphold the challenged rezoning ordinance.

Hampton and Krystal, however, would have the court and County Council view this controversy as a dispute simply "between a landowner and his neighbors as to what a single tract should be zoned." They argue that "County Council should be [an] adjudicator and not take side[s] by simply disagreeing with a C-3 classification and then on its own motion ... zoning [the subject property] C-1." More simply, they contend that a local governing body's act of rezoning a single tract is not a legislative function but is a quasi-judicial function and that a rezoning decision must be supported by substantial evidence.

Irrespective of whether County Council's act of rezoning the subject tract was a legislative function or a quasi-judi-

cial function, we have already shown that there is substantial evidence that the land in question is susceptible to a reasonable and lawful use under the classification imposed.

Regarding the question of whether a local zoning authority's rezoning of a single tract of land is a legislative or a quasi-judicial act, the concept of rezoning as a quasi-judicial act is frequently associated with a decision of the Oregon Supreme Court in *Fasano v. Board of County Commissioners*, 264 Or. 574, 507 P. (2d) 23 (1973), *overruled in part*, *Neuberger v. City of Portland*, 288 Or. 585, 607 P. (2d) 722 (1980). *See* N. Shortlidge, *The "Fasano Doctrine": Land Use Decisions as Quasi-Judicial Acts*, INST. ON PLANNING, ZONING, AND EMINENT DOMAIN § 3.01[2] at 3-4 (1985). Several states have adopted the so-called *Fasano* doctrine. *Id.* § 3.03[2] at3-27 — 3-33. The majority of the jurisdictions, however, still consider rezoning a legislative act. *Id.* § 3.03[5] at 3-40. South Carolina lines up with the majority. *See Conway v. City of Greenville*, 254 S. C. 96, 104, 173 S. E. (2d) 648, 652 (1970) (action by landowner to have municipality rezone a portion of landowner's property in which the Supreme Court stated that it "recognize[d] that the adoption of zoning ordinances is a legislative function.").

We are aware that the Supreme Court in *Rushing v. City of Greenville, supra*, remarked, as it quoted from *James v. City of Greenville*, 227 S. C. 565, 585, 88 S. E. (2d) 661, 671 (1955), that " '[i]n the final analysis the question of due process is a judicial, not legislative, one.' " But this statement cannot be stretched to mean that the Supreme Court favors the application of the *Fasano* doctrine in rezoning cases involving single tracts of land. The language is merely a reaffirmation by the Supreme Court that it will do its duty to declare an ordinance unconstitutional "where [the] ordinance is clearly violative of constitutional rights. . . ." *James v. City of Greenville*, 227 S. C. at 585, 88 S. E. (2d) at 671. This duty exists, as the Supreme Court explained in *Conway*, because "the determination of whether [zoning] ordinances deprive a citizen of constitutional rights is a judicial function and not [a] legislative [function]." 254 S. C. at 104, 173 S. E. (2d) at 652.

In any case, we reject the *Fasano* doctrine.

An ordinance rezoning a particular piece of property, ■ like an ordinance adopting a comprehensive zoning plan, is legislation, pure and simple. As such, it is entitled to the presumption of legislative validity. *See Bob Jones University v. City of Greenville, supra,* 243 S. C. at 360, 133 S. E. (2d) at 847 (in an action to void a rezoning ordinance, the ordinance "is presumably valid."). To regard the act of adopting an ordinance rezoning a single tract as anything other than a legislative act would be to sanction an impermissible encroachment upon the presumption of legislative validity. *Ed Zaagman, Inc. v. City of Kentwood,* 406 Mich. 137, 277 N. W. (2d) 475 (1979).

Furthermore, to view the act of rezoning a single tract as a quasi-judicial act, as the Supreme Court of Michigan recognized in the last-cited case, would

> only invite countless challenges, many of which must proceed to the courts for a dispositive adjudication. The net result of such a quasi-judicial scheme would most assuredly increase rather than relieve the burden on the courts; the burden on zoning bodies would likewise be unquestionably magnified.
>
> Further, and perhaps more significant, the authority of a zoning body's legislative action would likely be debased concomitantly to the extent that every affected property owner could challenge that authority, not on the basis of the value of the constitutionally valid zoning classification to the general public, but on the basis of that zoning determination's value to the individual property owner regardless of the general welfare. Such consequence would undoubtedly destroy both the necessity and desirability of representative legislative action as well as reduce land use determination to a type of "what's-in-it-for-me" or spot zoning scheme generally eschewed as not in the public interest.

*Id.,* 406 Mich. at 163, 277 N. W. (2d) at 481-82. The case at hand vividly illustrates the concerns so well expressed by the Michigan court.

For the foregoing reasons, therefore, the judgment is

Affirmed.

CURETON, J., concurs.

GARDNER, J., dissents in separate opinion.

GARDNER, Judge (dissenting):

I dissent.

The majority opinion is, in my opinion, inconsonant with all evidence of record and therefore, as later noted, inconsonant with due process and a just result in this case. The recommendations of the Tri-County Planning and Zoning Commission, the Richland County Planning and Zoning Commission and the City of Columbia Zoning and Planning Commission are all simply overlooked by my brethren.

And the injustice of the result reached by my brethren is highlighted emphatically by the fact that Richland County, itself, had for a half decade taxed Hampton by the assessment of property taxes based upon a C-3 (general commercial) evaluation of the subject property.

But what is so disquieting to me is that there is no testimony or evidence of record contra to the compelling evidence adduced by Hampton and Krystal.

Moreover, a cursory review of the zoning ordinances of Richland County reflects the conflict of the ordinances themselves with the zoning of the subject lot. Only a C-3 (general commercial) zoning classification is consonant with these ordinances which envision a C-3 zoning classification for lots adjacent to arterial highways as the subject lot is.

I adhere to the opinion which I originally authored in this case. *See Hampton v. Richland County, et al.,* Opinion No. 0785, Davis Advance Sheet No. 33 at 40, (Ct. App. Filed August 25, 1986) [Appendix].

As stated in the previously published opinion, the issue before council was not fairly debatable[1] and its decision is clearly arbitrary, unreasonable and capricious.

---

[1] Where the action of a zoning authority is not supported by substantial evidence, its decision is not fairly debatable and its findings fall in the category of being arbitrary, capricious and a denial of **due process.** 101 C. J. S. *Zoning and Land Planning* Section 23(a) (1979).

And "In the final analysis, the question of **due process** is a judicial and not a legislative one." *Rushing v. City of Greenville,* 265 S. C. 285, 217 S. E. (2d) 797 (1975).

And, lastly, I would suggest that the adoption or rejection of the *Fasano Doctrine* be deferred to the South Carolina Supreme Court.

## APPENDIX

GARDNER, Judge:

Dr. A. G. Hampton (Hampton) and the Krystal Company (Krystal) appeal an order of the Court of Common Pleas finding that the subject property was constitutionally zoned by the County Council of the County of Richland, S. C., as C-1 (office and institutional). We reverse.

The first issue of this case we address is whether the Richland County Council's zoning of the subject property as C-1 (office and institutional) was arbitrary, unreasonable and capricious.

Hampton is the owner of the subject property and Krystal is the equitable owner through a contract of sale; it is located on the west side of the Sumter-Columbia Highway (Garner's Ferry Road), near the corner of Rosewood Drive extension, a very busy intersection. The subject property is nearly rectangular in shape with dimensions of approximately 220 feet in width by 155.5 feet in depth; a large part of it is a steep embankment or hill. A panoramic view of the subject property reflects that on the town side, or its northern side, there is located a branch of the South Carolina National Bank; back of the bank is located a fast food service known as Quincy's; across the six-lane highway, are a McDonald's Restaurant and a Crown Station. Just to the north of that is an Exxon Station and a Mini-Warehouse. In the immediate vicinity are numerous commercial establishments including a K-Mart, Family Mart and various food restaurants. Abutting the subject property to the south is a high hill. Hampton owns the abutting property on the hill which is zoned residential. The subject property as noted is bounded by a six-lane highway on the east, property zoned C-3 (general commercial) on its north and west and the hill on its south. We note that the hill provides a natural barrier between subject and any surrounding residential properties.

We note that the Sumter-Columbia Highway (otherwise known as Garners Ferry Road) is a heavily traveled six-lane highway. It is estimated that 50,000 or more cars travel this

road daily. The flow of traffic is regular, being most intense during the business rush hours. Because of its function as a primary artery, the road is traveled by both private automobiles and commercial trucks, as well as emergency vehicles.

Prior to the institution of this action, the subject property was zoned D-1 (development district), which is a transitional, holding class zone. From 1980 Richland County had taxed the subject property as C-3 (general commercial). The Meadowfield Neighborhood Development Plan, a joint effort on the part of the Central Midlands Regional Planning Council, the City of Columbia Planning Commission and the Richland County Planning Commission, recommended that the subject property be zoned C-3 (general commercial).

The chronology of events that lead to this appeal are as follows.

In the Fall of 1982, Hampton and Krystal petitioned to have the subject property rezoned from D-1 (development district) to C-3 (general commercial). The Richland County Planning Commission in November 1982, made its recommendation that the property be rezoned to C-3 (general commercial). County Council, after holding a public hearing in December 1982, voted to deny the C-3 (general commercial) rezoning request. Hampton and Krystal forcefully assert that this refusal of County Council to rezone the subject property to C-3 (general commercial) amounted to a failure by County Council to afford them due process; this issue will be addressed hereinafter.

Hampton and Krystal, on a rule to show cause, obtained a circuit court order dated May 23, 1983, which required County Council to rezone the subject property to C-3 (general commercial). The circuit court, pursuant to a motion by County Council and Circuit Court Rule 41, rescinded the order and reheard the matter. The circuit court's new order dated August 29, 1983, required County Council to rezone the property from its D-1 (development district) "holding" classification to a zoning classification in keeping "with the totality of the surrounding facts and circumstances and with due regard to the rights of all landowners...." The circuit court reserved its judgment to determine what specific classification this property should be zoned until a

sufficiently ripe controversy arose. Hampton and Krystal appealed this order, but this appeal was held in abeyance by a March 1984 court order.

County Council, after a public hearing in October 1983, passed on final reading an amendment rezoning the property to C-1 (office and institutional).

Hampton and Krystal instituted a second action in November 1983, to which the County filed a Notice of Special Appearance and Motion to Dismiss. This motion was heard in April 1984. One of the appealed orders, dated April 30, 1984, denied the County's motion to dismiss and ordered the two cases consolidated. Subsequently, the appealed order of July 6, 1984, held that County Council's action in zoning the property C-1 (office and institutional) was appropriate and not in derogation of the constitutional rights of Hampton and Krystal.

The record reflects that Henry J. Ritmeester, Jr., testified for Hampton and Krystal. Mr. Ritmeester, who owns a real estate brokerage firm, testified that he had developed the adjacent property where the bank, Quincy's and other commercial buildings are located and represented Hampton in his efforts to lease the property to Krystal. It was Mr. Ritmeester, Jr.'s, testimony, in effect, that the property would have no value other than as commercial property. He testified on direct examination that because the economics would not support the cost of the removal of the hill, if the property were not zoned C-3 (general commercial), it would have no value. On cross-examination Mr. Ritmeester was asked whether, in his opinion, the property has no market value if zoned as C-1. His answer was "it is a theoretical question."

Mr. Philip E. McNeil, an officer of Krystal, testified that they were interested in operating one of their fast food service restaurants on the subject property and that if it were not zoned commercial, it would not be worth anything to Krystal.

Hampton and Krystal introduced (1) letters from the Richland County Planning Commission in which it was stated that they had approved the request that the property be rezoned as C-3 (general commercial), (2) a letter from Mr. Powell, the commercial appraiser for the Richland County

Assessors Office, to the effect that the property had been appraised in 1981 as if it were zoned C-3 (general commercial); he stated in his letter that the entire property sat (as of December 31, 1981) on a high steep hill. Hampton and Krystal also introduced a detailed and thorough study of the area made by the staff of the Central Midlands Regional Planning Council for the City of Columbia Planning Commission and Richland County Planning Commission entitled Meadowfield Neighborhood Development Plan; this plan recommended C-3 (general commercial) zoning. This report was financed in part by a comprehensive planning assistance grant and community development block grant from the U. S. Department of Housing and Urban Development.

Some interested citizens, through their retained attorney, voiced objections to zoning the property C-3 (general commercial), but offered *no evidence* to rebut the evidence introduced by Hampton and Krystal. They requested that the property adjoining the subject property be rezoned as residential and that Hampton place restrictive covenants on the property.

Our courts will not overturn the action of a County Council, acting as a legislative body, if the decision is fairly debatable because Council's action is presumed to have been a valid exercise of police power and it is not the prerogative of the court to pass upon the wisdom of the decision. But when the petitioner or petitioners (Hampton and Krystal) overcome the presumption that the County's action was valid and establishes the decision is not fairly debatable, but is rather so unreasonable as to impair or destroy constitutional rights, the court's duty is to declare the County's action unconstitutional. *In the final analysis* the question of due process is a judicial, not a legislative one. *Rushing v. City of Greenville,* 265 S. C. 285, 217 S. E. (2d) 797 (1975).

Where the action of a zoning authority is not supported by substantial evidence, its decision is not fairly debatable, and its findings fall into the category of being arbitrary, capricious and a denial of due process. 101A C. J. S. *Zoning and Land Planning* Section 23a (1979). We hasten to add, however, that the burden of proving the invalidity of a zoning ordinance is on the party attacking it, to establish that the

acts of the County Council were arbitrary, unreasonable and unjust. *Rush v. City of Greenville*, 246 S. C. 268, 143 S. E. (2d) 527 (1965).

The first question then is whether Hampton established that the decision of the County Council was not fairly debatable, and so unreasonable as to impair or destroy constitutional rights. We hold that Hampton and Krystal carried this burden of proof. On the other hand, there is a total dearth of evidence of record to support Council's zoning the property C-1 (office and institutional).

A finding not supported by evidence will be considered arbitrary and will not be sustained and the court may set aside decisions not supported by substantial evidence, or clearly contrary to the overwhelming weight of the evidence. The discretion of the Council must be based upon fact and supported by reasoned analysis. The zoning authority must consider only the facts and logic it relies upon. *Williams v. Sumter School District Two*, 255 F. Supp. 397, 403 (D. S. C. 1966), 101A C. J. S. *Zoning and Land Planning* Section 277 at 821 (1979).

The subject property is on the edge of the city limits, which circles around it. As noted, the planning boards of the City of Columbia, the County of Richland, and the Central Midlands Regional Planning Council all recommended, after very careful studies and the preparation of comprehensive plans for the development of the area, that the subject property be zoned C-3 (general commercial). In addition, Hampton and Krystal offered evidence that the subject property would be of no value if zoned C-1 (office and institutional). This evidence is credible; its location on an arterial highway, together with its topography, negates its use for residential purposes. The cost of excavation to level the lot to the level of the busy highway upon which it borders creates a situation inconsonant economically with the use of the lot for office and institutional purposes. Additionally and importantly, after Hampton and Krystal petitioned the Richland County Council to rezone the subject property to C-3 (general commercial), the Richland County Council requested the Richland County Planning Commission to recommend C-1 (office and institutional) zoning for the subject property; the Planning Commission unanimously

voted to reject this request and recommended C-3 (general commercial) zoning for the subject property.

Because no evidence whatsoever was offered to rebut the substantial evidence introduced by Hampton and Krystal[1], we hold that the appealed order of July 6, 1984, is erroneous and that the zoning of the property as C-1 (office and institutional) rather than C-3 (general commercial) is arbitrary, capricious and a denial of due process. Furthermore, by showing that the property can be used only if it is classified as C-3 (general commercial), Hampton and Krystal have elevated the issue before us to a constitutional level, i.e., that any other zoning would deprive Hampton and Krystal of due process of law and amount to the inverse condemnation of the subject property.

Having so decided, and with reference to the August 29, 1983, order, we address a development of present-day judicial thinking touched on briefly but emphatically by Chief Justice Ness in authoring *Rushing v. City of Greenville*, *supra*. There the Court, after adopting the "fairly debatable" rule, expanded the rule by these words, "In the final analysis, the question of due process is a judicial, not a legislative one." Hampton and Krystal strongly urge that they were denied due process by County Council's failure upon request to rezone the subject property from the holding classification to C-3 (general commercial). We think Chief Justice Ness in *Rushing* clearly reached the same conclusion as many modern-day legal authorities. *See* Shortlidge, *The "Fasano Doctrine": Land Use Decision as Quasi-Judicial Acts*, Inst. on Planning, Zoning, and Eminent Domain ch. 3 (South Western Legal Foundation 1985).

---

[1] We considered a set of factors used by another jurisdiction under the "fairly debatable" rule which were helpful in our analysis. Those factors include (1) character of the neighborhood, (2) zoning and uses of properties nearby, (3) suitability of subject property for uses to which it has been restricted, (4) extent to which removal of restriction will detrimentally affect nearby property, (5) length of time subject property has remained vacant as zoned, and the relative gain to public, health, safety and welfare by the destruction of value of the subject property as compared to the hardship imposed upon the individual land owner, (7) recommendation of the administrative staff and (8) the conformance of the requested change to the comprehensive plan being utilized. *See Dings v. Phillips*, 237 Kan. 551, 701 P. (2d) 961 (1985). Again, no evidence of these factors favoring County Council's action can be discerned from the record before us.

*Rushing* permits stricter scrutiny in reviewing the rezoning of specific parcels of property. *Cf. Golden v. City of Overland Park,* 224 Kan. 591, 584 P. (2d) 130 (1978) where the court recognizes a shift away from a local government's legislative function when a zoning change is urged upon a single specific tract of land as opposed to a general city or county wide zoning ordinance; based on this recognition in *Golden,* the Kansas Supreme Court found it was incumbent upon the city to disclose those factors it based its rejection upon the record of the court reviewing the rezoning action.

This is especially true in this state when the rezoning of a particular lot is at issue. All counties in South Carolina acquire their zoning authority and power perforce of either one of two sections of the Code of Laws of South Carolina (1976) as amended. Both Sections 4-27-10 to -360 entitled County Planning and Sections 6-7-10 to -1280 entitled Planning by Local Governments apply to county governments.[2] Both sections require a comprehensive plan and both sections require that all zoning ordinances be in accordance with a comprehensive plan.

However, both sections permit County Council to overrule the County Planning Commission's recommendation of the comprehensive plan. In other words, the County Council may refuse to adopt a comprehensive plan in its entirety and if so this would be a legislative act. But, we hold, that the rezoning of a particular lot of land to a zoning classification inconsistent with the County Planning Commission's recommendation in the comprehensive plan because of a dispute between the owners of a particular tract of land and other people, as was the case before us, is the act of a quasi-judicial body rather than a legislative body: in such a situation, the County Council sits to resolve a dispute — a quasi-judicial act. This seems to us to be obvious and presents the exact situation in which Chief Justice Ness by his decision in *Rushing* required that due process be accorded the litigants. And it is equally obvious in this case that a ruling adverse to Krystal and Hampton when no evidence was offered to dispute the voluminous evidence introduced into the record

---

[2] The record does not disclose which of the two sections is applicable to Richland County.

by Krystal and Hampton is a ruling inconsistent with the most rudimentary concepts of due process. We therefore hold that the Richland County Council's refusal to rezone the subject property to C-3 (general commercial) as requested by Hampton and Krystal was in violation of their constitutional rights to due process. The court below should have so held in its order of August 29, 1983.

For the reasons stated, the appealed orders are reversed and the case is remanded for entry of judgment in accordance with this decision.

Reversed and remanded.

CURETON, J., concurs in result only and GOOLSBY, J., dissents with separate opinion.

GOOLSBY, Judge (dissenting):

I respectfully dissent. The effect of the majority's opinion reversing the trial judge is to turn this court into a zoning board.

Our Supreme Court stated in *Rushing v. City of Greenville*, 265 S. C. 285, 288, 217 S. E. (2d) 797, 799 (1975), that the action of a municipality in zoning property will not be overturned on appeal if the municipality's decision is "fairly debatable." This is because the municipality's action is presumed to have been validly exercised and because it is not the appellate court's prerogative to pass upon the wisdom of the municipality's decision. Only where the municipality's action is "so unreasonable as to impair or destroy constitutional rights" [*Rush v. City of Greenville*, 246 S. C. 268, 276, 143 S. E. (2d) 527, 531 (1965)] will the court declare the municipality's action unconstitutional. *Rushing v. City of Greenville, supra.*

In my view, the action of the respondent Richland County Council in declining to change the zoning classification of the property of the appellants A. G. Hampton and The Krystal Company from D-1 transitional to C-3 general commercial and in changing the zoning classification of the subject property to C-1 neighborhood commercial is not patently unreasonable.

Unlike the subject property in *Rushing*, the subject prop-

erty in this case is not surrounded by commercial property. Rather, as the record shows, the subject property lies adjacent to commercial property to the north, which is classified as C-3 heavy commercial, and it adjoins predominantly residential property to the south, which is classified as D-1 transitional. The effect of the County Council's decision to classify the subject property as C-1 light commercial is to create a buffer of sorts between the two zones it lies between. This decision, it seems to me, is at least a fairly debatable one.

The record also discloses that, within a C-1 zone, an owner may locate upon his property "offices [and] institutions," including doctors and realty offices [and] antique shops." A C-1 zoning classification, therefore, permits a beneficial use of the subject property by its owners.

While the C-1 classification may not permit the most profitable use of the subject property, "a property owner is not entitled to have his property zoned for its most profitable use." 101A C. J. S. *Zoning & Land Planning* § 47b at 173 (1979); *see Ohoopee Land Development Corp. v. Mayor & Council of Wrightsville*, 248 Ga. 96, 281 S. E. (2d) 529 (1981) (a zoning classification is not unconstitutional simply because a developer is deprived of a more profitable use of his property).

A classification of property should be upheld as constitutional, absent evidence that the classification is either unnecessary or confiscatory. *See Golden v. Planning Bd. of Town of Ramapo*, 30 N. Y. (2d) 359, 334 N. Y. S. (2d) 138, 285 N. E. (2d) 291, 63 A. L. R. (3d) 1157 (1972), *appeal dismissed*, 409 U. S. 1003, 93 S. Ct. 440, 34 L. Ed. (2d) 294 (1972) (ordinance limiting the use of property will not be held unconstitutional unless it is shown to be unreasonable in terms of necessity or to have caused such a diminution in value as to be tantamount to confiscation). Here, the owners, as it was their burden to do [*see Bob Jones University v. City of Greenville*, 243 S. C. 351, 133 S. E. (2d) 843 (1963), *appeal dismissed*, 378 U. S. 581, 84 S. Ct. 1913, 12 L. Ed. (2d) 1036 (1964) (burden of proving invalidity of zoning ordinance is on the party attacking it) ], offered no evidence that the

classification suffered from either constitutional infirmity.[1]

I would affirm.

---

[1] Contrary to the majority's opinion, the owners' expert real estate witness Henry J. Ritmeester, Jr., was never asked on cross-examination or otherwise his opinion regarding the fair market value of the subject property if it were classified as C-1 light commercial. The answer, "It's a theoretical question," was given in response to the question asked him on cross-examination, "[I]s it your testimony that the property has no market value zoned D-1?" There is no testimony or other evidence, as asserted by the majority, that the subject property would have no fair market value if it were classified as C-1 light commercial.